Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1173 | **DATE** | 3/14/2002 |
| **CASE TITLE** | Oxford Capital Illinois, L.L.C. vs. Sterling Payroll Financial, L.L.C., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion for a preliminary injunction [doc. # 55] is denied. All matters subject to the referral having been concluded, the referral is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 1 5 2002 | |
| ✓ | Notified counsel by telephone. | date docketed | 62 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/14/2002 date mailed notice | |
| JJK | courtroom deputy's initials | 02 MAR 15 AM 7: 52 U.S. DISTRICT COURT CLERK | JJK mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
MAR 1 5 2002

| | |
|---|---|
| OXFORD CAPITAL ILLINOIS, L.L.C., an Illinois limited liability corporation, | |
| Plaintiff, | Case No. 01 C 1173 |
| vs. | Judge James B. Moran |
| | Magistrate Judge Schenkier |
| STERLING PAYROLL FINANCIAL, L.L.C., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Two of the defendants in this case, Sterling Payroll Financial, L.L.C. ("Sterling") and Nick Kyprianou (collectively, "the defendants"), have filed an amended emergency motion for a temporary restraining order and preliminary injunction (doc. # 55), which seeks to prohibit the plaintiff, Oxford Capital Illinois, L.L.C., "from prosecuting any other actions in any other jurisdictions regarding the issues in this case until this action is concluded" (Defs.' Mot. at 1). All parties – including the non-moving defendant, Sterling Business Solutions, Inc. – have filed limited consents, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, for this Court to enter a final ruling on the motion. After review of the legal memoranda submitted by the parties, the Court denies the defendants' injunction motion.

### I.

We begin with a brief summary of the relevant facts. Defendant Sterling Payroll Financial is in the business of providing professional employee services to its customers: it hires employees who are leased back to and work in the businesses of its customers (Defs.' Reply, Ex. A, ¶ 2). Mr.

Kyprianou is Sterling's managing member (*Id.*, ¶ 1). Sterling was responsible for paying the salaries, employment taxes and benefits of the leased employees (*Id.*, ¶ 3). Oxford Capital Illinois is in the business of providing financing to companies through factoring (purchasing) the accounts receivables of those companies (*Id.*, ¶ 4).

On March 7, 2000, Oxford and Sterling entered into a Master Factoring Agreement ("Agreement") (Defs.' Am. Mot., Ex. A, Complaint, ¶ 10). This Agreement assigned Oxford the exclusive right to purchase Sterling's accounts receivable (*Id.*, Ex. A, Master Factoring Agreement, ¶ 1). On February 21, 2001, Oxford filed this action, asserting that Sterling failed to meet its obligations and make certain payments to Oxford under the Agreement (*Id.*, at ¶¶ 23, 25, 26, 28)). Oxford seeks $6,060,760.40 as due and owing under the Agreement, exclusive of attorney's fees and expenses (Defs.' Mot., Ex. A, Complaint, ¶ 38). Sterling denies any liability, and claims that Oxford failed to provide funding to Sterling at a certain percentage rate of the receivables so that Sterling would be able to make all payments, including taxes, due on behalf of its customers (Defs.' Am. Mot. at 3-4; Defs.' Reply, Ex. A, ¶¶ 7-11, 15).

On February 26, 2001, shortly after filing this lawsuit, Oxford sought and received an *ex parte* temporary restraining order barring the defendants from taking certain actions regarding the accounts, including: (1) collecting on or otherwise soliciting payment on any of Sterling's accounts receivable; (2) tendering or selling Sterling's accounts receivable without first tendering them to Oxford; (3) indicating to Sterling's customers that payments on their accounts should not be made to Oxford; and (4) taking any action that infringes upon or is inconsistent with Oxford's perfected security interest in Sterling's accounts renewables (doc. # 2: Temporary Restraining Order ("TRO"), ¶¶ 1-4)). Immediately after entry of this TRO, the parties commenced settlement discussions, which

2

resulted in a settlement agreement signed by all parties on March 13, 2001; on March 14, 2001, this Court entered a modified TRO, which incorporated by reference the terms of the settlement agreement.

Unfortunately, defendants promptly violated this settlement agreement (and the amended TRO). This led Oxford to seek an order reinstating the litigation against defendants, which the Court granted on May 23, 2001 (doc. # 26); and an order of civil contempt, which the Court granted on November 26, 2001. *Oxford Capital Illinois, LLC v. Sterling Payroll Financial, LLC, et al.*, No. 01 C 1173, 2001 WL 1491521 (N.D. Ill. Nov. 26, 2001).[1]

Once the settlement agreement fell apart and this lawsuit recommenced, Oxford elected to pursue other litigation alternatives to collect the receivables: specifically, Oxford instituted lawsuits against a number of Sterling's customers directly. According to defendants, Oxford has filed five such actions in federal courts in New York; one in federal court in New Jersey; one in federal court in the Eastern District of Virginia, and perhaps one in a federal court in Maryland (Defs.' Am. Mot. at 4-6). For purposes of the motion, defendants focus on the three lawsuits in which Sterling has been named as a third-party defendant.

## A.

On August 1, 2001, Oxford filed a complaint against Tile King, Inc., one of Sterling's customers whose account was assigned to Oxford under the Agreement, in the United States District Court of New York, Eastern District (Case No. 01-CV-5115) (Defs.' Am. Mot., Ex. C). In that action, Oxford alleges that Tile King failed to pay $119,877.30 due and owing on their assigned

---

[1] The defendants thereafter complied with all conditions imposed by the contempt order. Accordingly, the Court entered an order on February 5, 2002, finding that the civil contempt was purged (doc. # 53).

3

account. This amount is a portion of the same $6 million that Oxford also seeks to recover from defendants in the present lawsuit.

On or about October 5, 2001, Tile King filed a third-party complaint in the above action against Sterling, alleging that Sterling breached an April 6, 2000 Client Service Agreement entered between Sterling and Tile King (Defs.' Am. Mot., Ex. D). Under this agreement, Tile King assigned the payroll of its employees to Sterling, and Sterling agreed to administer and pay all payroll and FICA taxes on behalf of Tile King employees. The third-party complaint maintains that Sterling "defaulted and breached the Factoring Agreement," thereby owing Oxford several million dollars (*Id.*). Tile King alleges conversion, breach of contract, and breach of fiduciary duty, claiming that Sterling failed to pay the payroll and FICA taxes for Tile King's employees, and that Sterling misappropriated funds paid by Tile King to Sterling that should have gone to Oxford under the Assigned Accounts provision of the Factoring Agreement. Tile King claims damages from Sterling not less than $500,000.

On November 19, 2001, Sterling answered that third-party complaint, and asserted several affirmative defenses – including that Tile King's alleged damages were caused "in whole or part by the wrongful acts on the part of Oxford *to wit*, Oxford's failure to advance certain monies to Sterling Payroll under the Factoring Agreement in derogation of the covenant of good faith and fair dealing" (Defs.' Am. Mot., Ex. K, Fourth Affirmative Defense). On November 20, 2001, an order was entered placing the Tile King case on an expedited discovery schedule (Defs.' Am. Mot., Ex. E). The order states that pleadings were to be amended by January 31, 2002. All fact discovery is to be completed by March 29, 2002, and expert disclosure is to be exchanged by April 30, 2002.

4

**B.**

On October 5, 2001, Oxford filed a complaint against F.P.C. Contracting & Development Corp., another Sterling customer, in the United States District Court of New York, Southern District (Case No. 01-CV-8964), with virtually identical allegations to the *Tile King* case actions (Defs.' Am. Mot., Ex. F). This action seeks over $1.6 million in damages from F.P.C. on the Assigned Accounts under the March 7, 2000, Agreement. These damages are again a portion of the total $6 million that Oxford is already seeking from the defendants in this case. On or about November 9, 2001, F.P.C. filed a third-party complaint against Sterling in the above New York action, making the same factual and legal allegations as in the *Tile King* case, and claiming in excess of $500,000 from Sterling (Defs.' Am. Mot., Ex. G). On December 14, 2001, a scheduling order was entered in the F.P.C. case, requiring the parties to amend all pleadings by January 31, 2002, and complete all fact and expert discovery by April 26, 2002 (Defs.' Am. Mot., Ex. H).

On February 5, 2002, Sterling filed an answer to F.P.C.'s third-party complaint. In that pleading, Sterling also asserted five affirmative defenses – including the same affirmative defenses pled in *Tile King*, alleging Oxford's misconduct to be the partial or whole cause of F.P.C.'s alleged damages (Defs. Am. Mot., Ex. L, Fourth Affirmative Defense).

**C.**

On September 17, 2001, Oxford filed a complaint in the U.S. District Court of New Jersey against another Sterling customer, Technical Construction Services, Inc. (Case No. 01-CV-4384) (Defs.' Am. Mot., Ex. I). The allegations are virtually identical to those against Tile King and F.P.C., but Oxford claims it is owed $527,099.52 from Technical Construction Services on the Assigned Accounts pursuant to the Agreement. Again, these damages are a portion of the alleged

5

$6 million that Oxford is already seeking to recover from the defendants in this action. On or about November 9, 2001, Technical Construction Services filed a third-party complaint against Sterling in the New Jersey action, pursuant to a May 16, 2000, Client Services Agreement. This complaint alleges the same facts, causes of action and damages against Sterling as set forth in the Tile King and F.P.C. third-party complaints.

On February 5, 2002, Sterling filed an answer to the third-party complaints. Again Sterling asserted as one of its affirmative defenses that some or all of Technical Construction Services' damages were caused by Oxford's alleged misconduct (Defs.' Am. Mot., Ex. M, Fourth Affirmative Defense).

## II.

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam) (emphasis original) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948, at 129-30 (2d ed. 1995)). Thus, a plaintiff must clear significant thresholds in order to obtain preliminary injunctive relief. In the Seventh Circuit, "a party seeking a preliminary injunction must demonstrate: (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Abbott Labs. v. Meade Johnson Co.,* 971 F.2d 6, 11 (7th Cir. 1992) (citing *Lawson Prods., Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir. 1986)); *see also Allied Signal, Inc. v. B.F. Goodrich Co.,* 183 F.3d 568, 573 (7th Cir. 1999); *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386-87 (7th Cir. 1984). "If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be

denied. If, however, the moving party clears both thresholds, the Court must then consider "(3) the irreparable harm the nonmoving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if the relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non parties." *Abbott Labs.*, 971 F.2d at 11-12. The Court then weighs all four factors, as would a chancellor in equity, seeking to "minimize the costs of being mistaken." *Id.* at 12 (citing *American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).

Because a movant must show both irreparable harm and a likelihood of success on the merits to obtain a preliminary injunction, the failure to establish one or both of these two threshold elements will defeat the motion. In this case, even assuming, as defendants argue (Defs.' Am. Mot. at 8-9), that defendants have a "better than negligible" likelihood of success on the merits, the defendants would need to make a strong showing of irreparable harm to warrant analysis of the balance of hardships and the public interest. *See, e.g., American Hospital Association v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("the required showing of probability of success on the merits 'varies with the quality and quantum of harm that [the moving party] will suffer from the denial of an injunction'") (citations omitted). But here, the Court finds that the defendants have not made any showing – much less a strong showing – of irreparable harm.[2]

---

[2]We acknowledge, but reject, Oxford's argument that defendants cannot make a showing of likelihood of success, because in granting the TRO Judge Pallmeyer found that Oxford has shown a likelihood of success (Pl.'s Resp. at 3). Judge Pallmeyer granted Oxford an *ex parte* temporary restraining order on February 26, 2001 (doc. # 2), but in making that ruling, Judge Pallmeyer did not make any findings regarding the merits of Sterling's position in this lawsuit. *See Libby v. Illinois High School Ass'n.*, 921 F.2d 96, 99 (7th Cir. 1990). Moreover, quite apart from the TRO not reflecting an adjudication on the merits, we see no conceptual reason why a plaintiff and defendant both may not have a "better than negligible" likelihood of success, since the "better than negligible" standard surely does not require a finding that it is more likely than not that one side will prevail. *See, e.g., Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 387 (7th Cir. 1984) (under the "better than negligible" standard, the "threshold is low" for establishing the requisite likelihood of success). In any event, given defendants' failure to show irreparable harm, we need not decide whether defendants have met this standard.

The defendants argue that they will suffer irreparable harm if this Court allows the collateral cases to proceed because: (1) "multiple verdicts and judgments will be entered against them in other courts that may well be impossible for them to comply with"; and (2) they may "face the problems and prejudice associated with the collateral effect of foreign judgments on their ability to prevail in this action" (Defs.' Am. Mot. at 11).[3] These concerns do not constitute an irreparable harm that equity can remedy, in part, because the defendants have an adequate remedy at law – namely, set-off – and, more fundamentally, because such "harms" are not the kind that equity can cure – even if there is no legal remedy to fill the gap. We will address the last point first.

### A.

The inconsistent judgments, collateral estoppel and *res judicata* concerns that defendants articulate (Defs.' Am. Mot. at 11-13) appear to be short-hand for the fear that a judgment may be entered against them in one of those other actions before a ruling is issued here, thereby creating a "collateral effect" or – as the defendants put it – "prejudice" in this case. But, the Court sees no basis

---

[3] The defendants also claim that they are "being prevented from presenting their full defense and asserting their own claims" for money in these other suits, because the TRO entered in this case prevented them from asserting counterclaims in those actions (Defs.' Reply at 8 and Ex. A, ¶ 17). We find this argument to be make weight. *First*, there is no dispute that on November 19, 2001, during the pendency of the TRO in this case, Sterling asserted in the *Tile King* case an affirmative defense alleging that Oxford had engaged in misconduct. Defendants assert that this affirmative defense would, if successful, defeat Oxford's claims in *Tile King* (and presumably in the other actions in which Sterling has asserted that affirmative defense) (Defs.' Reply at 8). Defendants do not offer any reason, and the Court finds none, why the TRO would have prohibited defendants from asserting counterclaims but not from asserting this affirmative defense. *Second*, to the extent that defendants felt that the TRO in this case inhibited them from asserting counterclaims in the other actions, they could have so advised this Court and long ago sought an amendment to the TRO to allow them to assert those counterclaims. *Third*, in any event, on February 5, 2001, the TRO in this case was lifted at the joint request of the parties (doc. # 54). Thus, the TRO no longer imposes any impediment – if it ever did – to the defendants asserting counterclaims in the other actions. *Fourth*, even if Sterling could not assert counterclaims based on Oxford's conduct in the other actions, defendants contend that the affirmative defenses based on Oxford's conduct are sufficient to defeat Oxford's claims. Defendants offer no satisfactory explanation as to how they would be injured in that event: particularly since the affirmative defenses assert the same conduct that defendants claim should defeat Oxford's claims in this case.

8

to issue an injunction barring Oxford from pursuing separate actions, just so that defendants may choose the forum that rules first.

Other courts, cited by the parties, have rejected the very argument raised by defendants. *See, e.g., Catherwood v. Hokanson,* 201 Ill. App. 462 (1st Dist. 1916). In *Catherwood,* an Illinois appellate court denied an injunction request on grounds that equity will not enjoin parties from "availing themselves of the right to litigate in a legal proceeding in a foreign jurisdiction" – even if there are matters common to both suits and some of the relief sought in one suit can be obtained in the other – where they have an "unquestioned right to prosecute," and "especially when their prosecution there" does not operate "to deprive the adverse party of any equitable right" in the pending case. *Id.* To "compel a party to abandon that right[,]" held the court, would "necessitate[] the existence of an equity superior thereto" – an equity that the case law did not then and does not now support. *Id.*

Although *Catherwood* supports the denial of an injunction here, the case is cited by defendants in support of their argument that the proceedings pending in other courts are part of a campaign of "vexatious and harassing litigation" by Oxford against them, which this Court should step in to prevent (Defs.' Am. Mot. at 10-12). This argument ignores that Oxford is not suing defendants in other courts. Rather, it is Sterling's customers who have chosen to implead Sterling in some (but not all) of the other actions instituted by Oxford, and that is a decision over which Oxford has no control. What's more, we can envision legitimate reasons why Oxford might wish to pursue the other actions. The settlement with defendants fell apart because of their professed inability to make the agreed periodic payments. *See Oxford Capital Illinois,* 2001 WL 141521, at *3. And, defendants' motion continues to assert that they possess limited resources (*see* Defs.' Mot.

9

at 11) (expressing the concern that they may be unable to comply with judgments that may be entered). In these circumstances, it is not surprising that Oxford might pursue both this case and its claims directly against Sterling's customers, to increase the chances that Oxford will be able to collect the money it claims is due and owing. We do not see evidence here of any fraud, oppression, bad faith, gross injustice or denial of any right by Oxford in pursuing the other actions, and thus find defendants' cases inapposite. *See, e.g., Kahn v. Kahn,* 59 N.E.2d 874 (1st Dist. 1945); *Russell v. Russell,* 70 N.E.2d 70 (1st Dist. 1946); *Adney v. Mississippi Lime Co.,* 241 F.2d 43 (7th Cir. 1957); *Wells v. Wells,* 343 N.E.2d 215 (5th Dist. 1976); *Park Plaza, Inc. v. Lincolnland Properties, Inc.,* 540 N.E.2d 789 (3rd Dist. 1989).

As in *Catherwood*, the record here shows no more than the fact that defendants will be put to the "inconvenience and additional expense" of litigating the collateral claims in multiple forums – "neither of which alone or together is a ground for equitable interference." *Catherwood,* 201 Ill. App. 462, 1916 WL 2439, at * 4. Moreover, like the court in *Catherwood*, this Court has not found, nor have the defendants cited, any cases that provide an equitable remedy in the circumstances presented here. Like the *Catherwood* court, we will not presume that the courts in the other actions will not resolve those actions fairly, or that this Court will be unable to use the doctrines of *res judicata* and collateral estoppel to avoid inconsistent results, or the doctrine of set-off to avoid double recoveries.

Indeed, the preliminary injunctive relief that defendants seek suffers from yet another serious defect: it would not even prevent the irreparable harm that looms. Defendants assert that without preliminary injunctive relief, they might be subjected to multiple verdicts and judgments (Defs.' Am. Mot. at 11). But, the preliminary injunction that defendants seek would not avoid this risk.

10

Defendants do not seek to bar Oxford from proceeding in the actions against Sterling's customers forever, but only "until this action is concluded" (Defs.' Am. Mot. at 1). Thus, granting defendants the preliminary injunction they seek would not eliminate the risk of multiple judgments and verdicts, but only would ensure that this case – rather than one of the other actions – would proceed to judgment first.

Defendants have offered no reason why they would suffer irreparable harm if one or more of the other actions were to proceed to judgment first, but not suffer the same harm if the lawsuit in this Court were to proceed to judgment before the other cases were decided. Nor can we think of any reason why that would be the case. No matter which case goes to judgment first, the parties will be able to use the doctrines of *res judicata* or collateral estoppel to attempt to streamline the litigation of those cases that have not yet proceeded to judgment. Contrary to defendants' arguments (Defs.' Am. Mot. at 11-12; Defs.' Reply at 9), the use of these doctrines should decrease the risk of inconsistent judgments.

Moreover, to the extent that defendants claim that their irreparable harm lies in the possible imposition of multiple adverse money judgments that defendants will not be able to pay, that risk is not an irreparable harm that defendants' desired injunction would prevent. If the risk of multiple judgments constituted irreparable harm, that risk results from the fact that there are multiple actions in which claims are being asserted against Sterling, and is not affected by which action proceeds to judgment first. Finally, to the extent that defendants complain that the multiple suits will cause them to spend more money than if they had to defend only one action, that again will be the case irrespective of which case proceeds to judgment first. And, any inefficiencies and increased costs

that potentially might result from the multiple suits can be lessened by allowing the discovery taken in the other cases to be usable in the action in this Court.

Thus, all that is left is defendants' naked desire to have the case in this Court proceed to judgment first. While there may be strategic reasons for this desire, the Court need not speculate on what they might be. The Court finds that defendants' inability to impose their desire as to which case proceeds first is not irreparable harm; the defendants are not entitled to invoke equity to interpose their strategic wishes.[4]

## B.

An injunction is not warranted here for the additional reason that there is, at least in part, an adequate remedy at law for the "harms" that defendants allege: namely, set-off. Certainly, "double recovery" (Defs.' Am. Mot. at 6; Defs.' Reply at 9), is not a realistic risk in this case. As Oxford concedes (Pl.'s Resp. at 6), money that Oxford collects in the other actions will be set-off against any future judgments that Oxford might obtain in this Court.

## **CONCLUSION**

Because we find no irreparable harm to the defendants, even assuming *arguendo* a likelihood of success on the merits, this Court denies the defendants' motion for a preliminary injunction (doc. # 55). Given these findings, the Court need not "balance the harms" since there is no harm to the

---

[4]Oxford alleges that in three of the other actions Oxford filed in federal court in New York, Oxford moved to stay based on the same elements of alleged irreparable harm asserted here – and that the presiding judge denied the motion to stay (Pl.'s Resp. at 5). While Oxford does not identify the names of the cases in which the motions were filed, defendants do not contest this assertion in their reply.

12

defendants from the plaintiffs' lawsuits.[5] Nor need we address the issue of the public interest or an injunction bond.

               **ENTER:**

               */s/ Sidney I. Schenkier*
               **SIDNEY I. SCHENKIER**
               **United States Magistrate Judge**

**Dated: March 14, 2002**

---

[5]The Court notes that even assuming defendants had made some showing of irreparable harm, given that defendants assert no more than a "better than negligible" chance of success, the balance of hardships would have to weigh significantly in defendants' favor to warrant a preliminary injunction. *Roland*, 749 F.2d at 387 ("The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor"). Here, there are significant risks that an injunction would present for Oxford. For example, a preliminary injunction would prevent Oxford from honoring deadlines set by presiding judges in other actions, which could result in one or more of the other actions being dismissed for want of prosecution. That, in turn, could deprive Oxford of other sources of recovery in the event it has meritorious claims – which is not an insignificant harm, if (as well might be the case) defendants are unable to satisfy a judgment if Oxford obtains one.

13